**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | Case No. CV 05-214-C-LMB |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| THERRAL JACKSON, | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| _____ | ) | |

Currently pending before the Court is the United States' Motion for Summary Judgment (Docket No. 42). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**I.**

**BACKGROUND**

At issue in this litigation are two scenic easements ("the Easements") held by the United States Forest Service ("Plaintiff") on property owned by Therral Jackson ("Defendant"). *See Berg Declaration*, ¶¶ 4, 10 (Docket No. 43). The scenic easements were purchased by Plaintiff in 1980 on property overlooking the Middle Fork of the Clearwater River, a designated component of the Wild and Scenic River system. *Id*. at ¶¶ 3–5. In 2002, Defendant purchased the property encumbered by the easements, i.e., Tracts 380A and 380B. *Id*. at ¶ 10.

The Easements contain the following provisions:

> h.   No changes in the general topography of the landscape or land surface will be permitted except for those caused by the forces of nature, and those authorized in writing by the Secretary of Agriculture or his duly authorized representative. No permission shall be required to drill wells or to lay, operate, maintain, repair, or remove water and sewer pipelines,

**MEMORANDUM DECISION & ORDER -1-**

> drains, or other utility lines below the surface of the easement area insofar as such activities do not permanently impair or ruin the natural beauty of said easement area.

*Section II(h) of the Easement on Tract No. 380A*, *Att. B to Berg Declaration*, p. 4 (Docket No. 43, Att. 2); *Section II(h) of the Easement on Tract No. 380B*, *Att. C to Berg Declaration*, p. 4 (Docket No. 43, Att. 3).

According to Plaintiff, in the fall of 2002, Defendant "began a pattern of disregarding the restrictions on his property and pursuing significant ground-disturbing projects without informing or seeking permission from the Forest Service." *Plaintiff's Memorandum in Support*, pp. 2–3 (Docket No. 42, Att. 1). Specifically, on June 31, 2004, District Ranger Cynthia Lane ("Lane") and Heather L. Berg ("Berg"), the Wild and Scenic Rivers Administrator for the Clearwater and Nez Perce National Forests, "drove by the Jackson property and noticed several modifications that had not been requested or approved: a large concrete retaining wall, a steel bridge spanning Little Smith Creek, and a garage different from approved plans." *Id*. at p. 3; *Berg Declaration*, ¶ 19 (Docket No. 43). According to Plaintiff,

> [w]ithout notifying the Forest Service, Jackson had, among other unauthorized activities, created a massive concrete retaining wall ranging in height from 4'6" to 9' tall. He had filled in the area behind the wall, leveled the ground and installed two paver patios measuring approximately 61 x 28 feet and 40 x 43 feet. . . . At or around the same time, Jackson poured concrete footings on the East and West sides of Little Smith Creek which separated the two tracts. He erected a 55-foot-long steel bridge onto those footings, and then poured a 114-foot concrete walkway from the bridge to the front of his residence.

*Plaintiff's Memorandum in Support*, p. 3 (Docket No. 42, Att. 1); *Berg Declaration*, ¶ 20 (Docket No. 43). Plaintiff contends these structures violate Section II(h) of the Easements because they changed the general topography of the landscape or land surface and were not authorized in writing. *Plaintiff's Memorandum in Support*, p. 3 (Docket No. 42, Att. 1).

**MEMORANDUM DECISION & ORDER -2-**

## II.

## MOTION FOR SUMMARY JUDGMENT

On July 28, 2006, Plaintiff moved for summary judgment, seeking a declaratory judgment that Defendant violated the terms and conditions of the Easements, an injunction "restraining Defendant and all persons acting in concert or participating with the Defendant from proceeding with any timber harvest or other ground disturbing activities with out [sic] prior written authorization from the USFS as set out in the scenic easement;" a requirement that Defendant remove "the retaining wall and return the ground to its pre-existing condition" or the grant of damages "in an amount equal to the cost of restoring the property and returning the ground to its pre-existing condition and for the damage caused by the unauthorized activities of Defendant" and an award of Plaintiff's "costs, expenses, attorney fees." *Plaintiff's Motion for Summary Judgment* (Docket No. 42); *Complaint*, p. 4 (Docket No. 1).

### A.   Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

#### 1.   Genuine Issue of Material Fact

According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment. An issue is "material" if it affects the outcome of the litigation. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975). A material fact is

> one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn*, 523 F.2d at 464 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Accordingly, "[a] mere scintilla of evidence supporting the non-moving party's position is insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Likewise, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citing *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995)). Further, because factual disputes are to be resolved at trial, in ruling on summary judgment motions, the Court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* at 631.

### 2.     **Moving and Nonmoving Parties' Burdens**

The initial burden is on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c). If the moving party

**MEMORANDUM DECISION & ORDER -4-**

meets its initial burden, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl*, 703 F.2d at 393 (quoting *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)). In addition, the nonmoving party must make a showing sufficient to establish the existence of an element that is essential to the party's case and upon which the party will bear the burden of proof at trial; otherwise, summary judgment is required. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element of the nonmoving party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323; *see also* Fed. R. Civ. P. 56(e).[1] In order to withstand a motion for summary judgment, a nonmoving party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989) (citation omitted).

In recent years, the Supreme Court, "by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment."

---

[1] Rule 56(e) states that, in responding to a motion for summary judgment,

> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**MEMORANDUM DECISION & ORDER -5-**

*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Therefore, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.* Nonetheless, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc.*, 809 F.2d at 631; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding a motion for summary judgment must be denied when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party").

**B.     Discussion**

In opposing the motion for summary judgment, Defendant argues that (1) at least some of the alleged violations of the Easements are not subject to the Easements because they are not located on the encumbered property, (2) the terms of the Easements are ambiguous such that there is a genuine issue of material fact as to whether Plaintiff's permission was a necessary prerequisite to building the structures at issue, (3) even if the Easements are not ambiguous, the structures do not violate the Easements because they do not change the general topography of the land, (4) pursuant to the quasi-estoppel doctrine, Plaintiff is estopped from claiming the structures were not authorized, and (5) Plaintiff waived the requirement of written approval by not enforcing the written-approval requirement with others. *Defendant's Memorandum in Opposition*, pp. 3–10 (Docket No. 50). The Court will address each argument in turn.

**1.     Scope of Easement**

Defendant argues, based on a recent land survey, that certain structures, including the retaining wall, are not within the scope of the Easements in that they are not located on the encumbered property. *Defendant's Memorandum in Opposition*, p. 5 (Docket No. 50). Plaintiff

"does not challenge the validity of this survey," and recognizes that "only a small portion of the retaining wall and associated paver patios lay inside the easement area." *Plaintiff's Reply*, p. 5 (Docket No. 54). However, Plaintiff points out that "[l]arge portions of the paver patios, its fill material and the shorter of the two retaining walls are in the easement area." *Id*.

Because only those structures that are within the area encumbered by the Easements are subject to the Easements, those structures lying outside of the area are not violations of the Easements. Accordingly, to the extent Plaintiff's Complaint is based on allegations that structures lying outside of the Easements violate the Easements, Plaintiff's Motion for Summary Judgment is denied.

### 2.      Section II(h), the Written-Authorization-Required Provision

Section II(h) of the Easements prohibits "changes in the general topography of the landscape or land surface" without authority in writing from the Secretary of Agriculture or his duly authorized representative.[2] *Section II(h)*, *Easement*, *Att. B to Berg Declaration*, p. 4 (Docket No. 43, Att. 2); *Section II(h)*, *Easement*, *Att. C to Berg Declaration*, p. 4 (Docket No. 43, Att. 3). It is undisputed that Defendant did not receive written authority for erection of the structures at issue. Nonetheless, Defendant argues that when Section II(h) is read in light of the other provisions of the Easement, it does not prohibit unauthorized construction of the structures at issue because other provisions expressly permit such construction without mentioning written authorization. *Defendant's Memorandum in Opposition*, pp. 6–8 (Docket No. 50).

---

[2] A few exceptions to this general requirement exhibit, but do not apply in this case. *See Section II(h)*, *Easement*, *Att. B to Berg Declaration*, p. 4 (Docket No. 43, Att. 2); *Section II(h)*, *Easement*, *Att. C to Berg Declaration*, p. 4 (Docket No. 43, Att. 3).

**MEMORANDUM DECISION & ORDER -7-**

For example, Plaintiff points to Section II(c), which states that "[a]ll buildings shall not cover more than 25 percent of the easement area" and that "[a]t least 50 percent of the easement area shall be maintained as green space (i.e., grass, trees, and shrubs)." *Section II(c)(3)–(4), Easement*, *Att. B to Berg Declaration*, p. 3 (Docket No. 43, Att. 2); *Section II(c)(3)–(4), Easement*, *Att. C to Berg Declaration*, p. 3 (Docket No. 43, Att. 3). This section, according to Defendant, indicates that he was allowed to erect buildings as long as such buildings did not result in more than twenty-five percent of the easement area being covered by buildings or less than fifty percent of the easement area being maintained as green space. *Defendant's Memorandum in Opposition*, p. 7 (Docket No. 50). Thus, Defendant contends, "this provision contemplates the movement of dirt that is incidental to construction, and yet, it does not include any requirement for obtaining written approval from the government." *Id*.

Defendant also points to Section II(d), which states that "[b]uildings and structures may be constructed, erected, or moved onto said lands only for farm, residential, or approved commercial purposes" and lists restrictions related thereto. *Id*. at pp. 7–8; *Section II(d), Easement*, *Att. B to Berg Declaration*, pp. 3–4 (Docket No. 43, Att. 2); *Section II(d), Easement*, *Att. C to Berg Declaration*, p. 4 (Docket No. 43, Att. 3). As with Section II(c), Defendant contends Section II(d) allows for construction and erection of structures without prior approval. *Defendant's Memorandum in Opposition*, p. 8 (Docket No. 50). Thus, Defendant contends that nothing in the Easements prohibit him from constructing "any structure or building so long as it does not violate the six limitations associated with new construction which are set forth in Section II(d) or the limitations set forth in Section II(c)." *Id*.

Interpreting Sections II(c) and (d) as Defendant urges would exactly contradict Section II(h), which requires written authorization for *all* changes to the general topography of the land,

**MEMORANDUM DECISION & ORDER -8-**

with a few exceptions that do not apply here.  Thus, construing the Easements as Defendant urges partially nullifies a provision of the Easements.

Contrary to Defendant's assertions, the Easements unambiguously require written authorizations for *all* changes to the general topography of the land.  Section II(c) and (d) operate only to place further prerequisites for the erection and construction of structures.  They do not remove or otherwise nullify the written authorization requirement.

### 3. Change in the General Topography of the Landscape

Defendant contends that, even when interpreting the Easements as requiring written authorization for all changes in the general topography of the landscape, Defendant's structures do not violate the Easements because they "were built in harmony with the existing slopes and contours of the land and any change in topography is simply incidental to the construction process." *Defendant's Memorandum in Opposition*, p. 9 (Docket No. 50).

The Easements expressly prohibit "changes in the general topography of the landscape or land surface" without written authorization.  *Section II(h)*, *Easement*, *Att. B to Berg Declaration*, p. 4 (Docket No. 43, Att. 2); *Section II(h)*, *Easement*, *Att. C to Berg Declaration*, p. 4 (Docket No. 43, Att. 3).  "Topography" refers to "the configuration of a surface including its relief and the position of its natural and man-made features."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1244 (10th ed. 1999); *cf. Plaintiff's Memorandum in Support*, p. 7 (Docket No. 42, Att. 1) (quoting the definition of "topography" as "[the] physical features of a place or region," WEBSTER'S II DICTIONARY 735 (3d ed. 2005)).  Accordingly, the structures violate Section II(h) of the Easements if their construction changed the general configuration of the surface of the easement property including its relief and the position of its natural and man-made features.

**MEMORANDUM DECISION & ORDER -9-**

In determining whether the structures violate Section II(h) such that there remain no genuine issues of material fact, each of the allegedly-violative structures, i.e., the retaining wall and patios, the bridge, and the walkway,[3] will be examined independently.

### a.   **Retaining Wall & Patios**

The retaining wall ranges in height from 4'6" to 9' tall.  *Plaintiff's Statement of Undisputed Facts*, ¶ 7 (No. 42, Att. 3).  Having constructed the wall, Defendant "filled in the area behind the wall, leveled the ground and installed two paver patios measuring approximately 61 x 28 feet and 40 x 43 feet."  *Id*.  Berg described the structures with more particularity as follows:

> The retaining wall was constructed in two parts with one portion being approximately 9 feet tall and 31 feet long and the other about 4.5 feet tall and 61 feet long.  The taller wall is stained green and the shorter wall is stained red.  An area between the pond and above/behind the retaining wall was filled, leveled and paved with interlocking pavers.  A separate

---

[3]  At the October 16, 2006, hearing on this motion, Plaintiff made mention of a bell tower with a concrete pad.  *See Photo No. 31*, *Att. Y to Berg Declaration*, p. 33 (Docket No. 43, Att. 27).  The bell tower and concrete pad are not mentioned in the Complaint, however.  *See Complaint* (Docket No. 1).

Though the bell tower was not included in the Complaint, Plaintiff mentioned the bell tower in its Memorandum in Support of the Motion for Summary Judgment (Docket No. 42, Att. 1).  Specifically, Plaintiff stated as follows:

> The Defendant was not authorized by the Forest Service to install the retaining wall and associated pavers or the footbridge or the structures atop the patio or the bell tower.  This Court must determine whether the scenic easement owned by the United States prohibits the Defendant's construction of *a retaining wall and associated pavers, as well as a foot bridge*.  If this construction is prohibited by the scenic easement, this Court must determine whether removal and restoration is the appropriate remedy pursuant to Idaho property law.

*Plaintiff's Memorandum in Support*, p. 6 (Docket No. 42, Att. 1) (emphasis added).  Notably, Plaintiff directed the Court's attention to the retaining wall and bridge, but not to the bell tower, which is consistent with its request that the Court "order Jackson to abide by the terms of easement, to remove the concrete retaining wall and associated pavers and curbs, the metal bridge spanning Little Smith Creek and its abutments, and to rehabilitate the affected areas to pre-existing conditions."  *Id*. at p. 11.  Likewise, the bell tower was not mentioned in Plaintiff's Reply Memorandum in Support of the United States' Motion for Summary Judgment (Docket No. 54).  Accordingly, the bell tower and concrete pad are outside the purview of this Memorandum Decision and Order addressing the Motion for Summary Judgment.

**MEMORANDUM DECISION & ORDER -10-**

>   area, between the area just described and the shop was also leveled and
>   paved with interlocking pavers.

*Berg Declaration*, ¶ 20 (Docket No. 43).

Prior to the erection of these retaining walls and patios, the landscape consisted generally of an upper, level area with a slanting or sloped drop-off covered by brush and trees. *See Photo No. 21*, *Att. Y to Berg Declaration*, p. 23 (Docket No. 43, Att. 27).

The construction of the retaining walls and patios significantly changed the layout and topography of the property from one having a brush-covered, slanting or sloping downgrade to a sharp, vertical cutoff of a prominent concrete wall. *Compare id.*, *with Photo No. 22*, *Att. Y to Berg Declaration*, p. 24 (Docket No. 43, Att. 27). As such, it is clear that the retaining walls and patios constructed on the easement-encumbered property changed the general configuration of the surface of the property including its relief and the position of its natural and man-made features within the easement-encumbered property. Accordingly, having closely and carefully reviewed the evidence in the record, including the photographs of the landscape before and after the construction of the retaining wall and patios, and having personally visited and viewed the property at issue on November 2, 2006, with counsel of record, at which time the easement boundary was clearly marked, the Court concludes that those portions of the patios and retaining walls that are within the easement-encumbered property constituted changes in the general topography of the landscape as prohibited by the Easements. To this extent, Plaintiff's Motion for Summary Judgment is granted.

### b.  Bridge

The bridge at issue is a steel bridge with a fifty-five foot span across Little Smith Creek. *Berg Declaration*, ¶ 20 (Docket No. 43). It was placed on poured concrete footings on each side of the creek. *Id.* "The west footing on Tract 380A [is] about 15.5 feet in diameter with

**MEMORANDUM DECISION & ORDER -11-**

approximately 3.5 feet of concrete above ground.  The east footing on Tract 380B [is] about 9 feet in diameter with approximately 2.5 feet of concrete above ground." *Id.*; *see also Photo Nos. 17–18*, *Att. Y to Berg Declaration*, pp. 19–20 (Docket No. 43, Att. 27).

The record does not contain photographs of the landscape prior to the erection of the bridge, and Plaintiff has not alleged that the erection required the removal of landscape features or the addition of significant amounts of material.  Plaintiff alleges merely that "[e]xcavation was necessary to place the footbridge footings."  *Plaintiff's Reply*, p. 8 (Docket No. 54).

Given the lack of evidence as to the condition of the general landscape prior to the erection of the bridge, a rational trier of fact could reasonably conclude that the erection of the bridge, with its footings, did not result in a change to the general topography of the landscape.  To this extent, Plaintiff's Motion for Summary Judgment is denied.

    c.  **Concrete Walkway**

The walkway at issue consists of a green-dyed concrete pathway proceeding from the bridge up the gentle slope of the hill on Tract 380A.  *See Photo No. 16*, *Att. Y to Berg Declaration*, p. 18 (Docket No. 43, Att. 27).  As with the bridge, the record does not contain a photograph or description of the landscape prior to the construction of the walkway.  Unlike the obvious change in topography created when the retaining walls and patios were constructed by Defendant, the concrete walkway appears to follow the slope or lay of the property.  As such, it appears that a genuine issue of material fact exists as to whether the installation of the concrete walkway constitutes a change to the topography of the property.  Rather than make a determination at this time based on the limited record and evidence before the Court on this issue, the better course will be to consider further evidence at trial and allow the trier of fact to make that finding.  For all of these reasons and because the walkway apparently follows the

**MEMORANDUM DECISION & ORDER -12-**

general contours of the surface of the land on which it rests, a rational trier of fact could reasonably conclude that construction of the concrete walkway did or did not change the general topography of the landscape. Accordingly, Plaintiff's Motion for Summary Judgment, to the extent it relates to the walkway, is denied.

### d. Topography Summary

The construction of the portions of the retaining walls, the fill behind the walls, and paver patios placed within the easement-encumbered property, constituted what Section II(h) of the Easements refers to as "a change in the general topography of the landscape or land surface." Even so, there remain genuine issues of material fact as to whether the construction of the bridge, with its concrete footings, and the construction of the concrete walkway constituted changes in the general topography of the landscape or land surface.

Accordingly, Plaintiff's Motion for Summary Judgment is granted to the extent it seeks a declaration that the construction of the portions of the retaining walls and patios located on the easement-encumbered property constituted "a change in the general topography of the landscape or land surface" pursuant to Section II(h) of the Easement, but is denied to the extent Plaintiff seeks a similar determination as to the bridge, with its concrete footings, and as to the concrete walkway.

### 4. Quasi-Estoppel Doctrine

Recognizing that portions of the retaining walls, backfill, and patios, are located on easement-encumbered property, further legal analysis must be made as a result of Defendant's asserted defense of quasi-estoppel.

The doctrine of quasi estoppel "prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken." *Atwood v. Smith*, 143

**MEMORANDUM DECISION & ORDER -13-**

Idaho 110, 114, 138 P.3d 310, 314 (2006) (quoting *C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 144, 75 P.3d 194, 198 (2003)). Quasi estoppel applies when (1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one from which he or she has already derived a benefit or in which he or she has already acquiesced. *Atwood*, 143 Idaho at 114, 138 P.3d at 314.

In this case, Defendant avers that he was given verbal authority by Plaintiff to install the bridge and the patio. *Jackson Declaration*, ¶¶ 9–10 (Docket No. 50, Att. 2). Also, he claims he was given verbal approval by Heather Berg or Cynthia Lane on numerous occasions. *Id*. at ¶ 4. Accordingly, Defendant argues that Plaintiff, by now alleging that the structures were unauthorized, has taken a different position than the one it originally maintained and that Defendant was thereby induced to rely on the verbal authorization by not seeking written authorization and, alternatively, that it would be unconscionable to permit Plaintiff to now maintain that the structures were unauthorized. *Defendant's Memorandum in Opposition*, p. 10 (Docket No. 50).

Plaintiff, in response, contends that "the Forest Service never authorized [the structures], and in fact strongly and timely objected to them." *Plaintiff's Reply*, p. 4 (Docket No. 54) (citing *Atts. L–Y to Berg Declaration* (Docket No. 43, Atts. 14–26)). Particularly, Plaintiff points to the September 13, 2004, letter written by Defendant and his partner responding to notices of violation of the Easements and demands to remove the structures. *Sept. 13, 2004, Letter from Jackson & Brotnov to Lane*, Att. T to Berg Declaration (Docket No. 43, Att. 21). Therein, Defendant and his partner make numerous points in support of their position that they had not

**MEMORANDUM DECISION & ORDER -14-**

violated the Easements, but do not make any mention of having received verbal approval. *See id.*

In ruling on summary judgment motions, the Court is not to resolve conflicting evidence with respect to disputed material facts, weigh evidence, or make credibility determinations. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court would have to do just that to conclude that no verbal authorization for the structures was given by Plaintiff or, to the contrary, that verbal authorization was given. Either conclusion or interpretation of the record would be inappropriate at this time as there remain genuine issues of material fact as to whether Plaintiff did or did not give verbal authorization for the structures in dispute here.

Thus, although it is clear that construction of the concrete retaining walls, backfill, and patios changed the topography of the property as prohibited by the Easements, there remain genuine issues of material fact as to whether an oral waiver of the advance written requirement was or was not granted. It is a factual dispute of one party averring that oral approval was granted and the other party denying that any verbal authority to construct the walls and patios was given. In light of the clear direction provided in the case law authorities and considering the provisions of Rule 56, a conclusion, one way or the other on the claimed oral or verbal authorizations, would constitutn an act of weighing evidence, resolving conflicting testimony, and making a determination of the credibility of the testifying witnesses, all of which cannot be done when considering motions for summary judgment. Accordingly, the relief sought by Plaintiff in its motion and in its July 28, 2006, Memorandum in Support, p. 11 (Docket No. 42, Att. 1), cannot be fully granted until the genuine issues of material fact are resolved by the trier of fact as regards the factual issue of whether verbal authorization was or was not given.

**MEMORANDUM DECISION & ORDER -15-**

### 5. Waiver of Right to Enforce

Lastly, Defendant argues that Plaintiff has waived its right to enforce the Easements because it has not enforced similar provisions with the previous owner of the encumbered property or with other land owners. *Defendant's Memorandum in Opposition*, p. 10 (Docket No. 50).

In the absence of established policies regarding action or inaction, it is generally within an agency's absolute discretion to decide not to enforce a right. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Socop-Gonzalez v. Immigration & Naturalization Serv.*, 208 F.3d 838, 844 (9th Cir. 2000).[4] Thus, the fact that Plaintiff may have decided not to sue potential violators of other easements does not prohibit Plaintiff from seeking enforcement of the Easements at issue in this action.

### C. Conclusion

In addressing Plaintiff's Motion for Summary Judgment, the Court concludes as follows:

1.  Only those portions of the structures lying within the easement-encumbered property are within the purview of this Memorandum Decision and Order. Specifically, those portions of the retaining walls, backfill, and patios that are outside the boundaries of the Easements are not affected by this Memorandum Decision and Order. Further, structures not included in Plaintiff's Complaint or prayer for relief, including the bell tower with its concrete pad, and the modifications and additions to the garage/shop, are neither addressed nor affected by this Memorandum Decision and Order.

---

[4] Notably, Defendant has not argued that the USFS has an established policy against enforcing easements such as the ones at issue in this action.

**MEMORANDUM DECISION & ORDER -16-**

2. Section II(h) requires written authorization for the structures that resulted in changes in the general topography of the landscape or land surface.

3. The construction of those portions of the retaining wall, backfill, and patios lying within easement-encumbered property changed the general topography of the landscape or land surface as prohibited by the Easements.

4. There remain genuine issues of material fact as to whether the erection of the bridge, together with its concrete footings, or construction of the concrete walkway changed the general topography of the landscape or land surface.

5. Further, there remains a genuine issue of material fact as to whether Defendant received verbal authorization for construction of the various structures at issue here.

6. Plaintiff has not waived its right to enforce the Easements due to allegedly not having enforced other similar easements against other potential violators.

## III.

## ORDER

In accordance with the foregoing reasoning, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 42) is GRANTED in part and DENIED in part as provided above.

DATED: **November 14, 2006**.

Larry M. Boyle
United States District Court